All right. When we're ready, our second case for this morning will be United States v. Danny Turner. So, as I said, this is United States v. Turner, No. 21-2309, and you must be Mr. Kaspari. Kaspari, Your Honor. Yes. Kaspari. Good morning, Your Honors, and may it please the Court. Alexander Kaspari, appointed counsel on behalf of Mr. Danny Turner. Mr. Turner should have received a 12-year sentence. The District Court said so. Instead, however, the Court imposed a 20-year sentence after mistakenly concluding that Section 924E mandated that result. Specifically, the District Court made two critical errors that led it to conclude that Mr. Turner's two prior Wisconsin convictions qualified as serious drug offenses. Both errors independently require this Court to vacate Mr. Turner's sentence. First, the government's version of the categorical approach adopted by the District Court will cause enormous inefficiencies in sentencing, yield inconsistent sentences, and violate various binding precedent. Following this Court's decisions in Ruth and de la Tour, the District Court had no need, nor authority, to conduct a factual investigation into the existence of cocaine's esters and narcotic analogs. But what is the Court supposed to do? Suppose there were some item in this list that Wisconsin has that includes salts, esters, isomers, and so on, that said something patently impossible, purple versions of, or something. I mean, surely the Court can look at the language of the Wisconsin statute and see whether anything is purple. And that's what the judge does. It's actually sort of a three-stage process, which we often do, where Mr. Turner points out that there's a mismatch, or an apparent mismatch, between the Wisconsin law and the federal law. The government comes back and says, you know, that isn't as much as it looks like, because we are presenting expert evidence to show that there are no esters of cocaine. And the burden would then shift back to the person asserting this possibility of an existence to show that there can be, or maybe to show that this is a common street way of referring to things or showing something that would address the government's point. But Mr. Turner made a conscious decision not to follow up with the evidentiary hearing that the district court was offering on the point. So why wasn't that the end of it? Well, I think under this Court's decisions in Ruth and de la Torre, Ruth and de la Torre are very clear, and I think taking a step back, the government concedes that Wisconsin is categorically broader than its federal counterpart. So given that concession, Ruth and de la Torre say explicitly that where the statute is categorically broader than its federal counterpart, based on the text itself, that ends the analysis. Ruth specifically left this door open for impossibility, right? So I think Ruth should be, first off, viewed as – Isn't that what it said? Well, it uses the term, I believe, unquestionably non-existent conduct. Right. Now, I think that the way to interpret that is the way that the Sixth Circuit addressed possession with intent to attempt to transfer, right? It's legally impossible. It's a definition of – it's the question of – No, this is physically impossible. This is like an assault statute that covers assaults on human beings, leprechauns, and zombies. Or is it not? So I think – It's categorically broader. Right. Does that mean the defense wins? So that's not what we're dealing with here, though. We're dealing with a very specific problem here. But we are, because the government said cocaine itself is an ester, and there are these reverse esters, which is causing all of us to go back to our AP chemistry classes. But cocaine itself doesn't have esters, or at least so the government's witness said. Right. And there's nothing on the other side of that. So we don't – there's nothing on the other side of that because there didn't need to be an evidentiary hearing. Well, that's why – why are you pushing Ruth too far? That's the question. So I would say that the government has previously said that Ruth itself was a ridiculous decision because there were – They thought there were no positional isomers, I remember. Right. So this court has already adopted a bright-line approach, and it's an easily – it's an efficient approach. And while there might be a theoretical possibility of an absurd result, the result here was not absurd at all. Applying Ruth as it's been said, applying Ruth here, there's no question that – the government concedes, right, that esters and narcotic analogs are categorically broader and that they're in the statute. And they don't, on the narcotic side of things – I read their brief – concede the point that you're making because the federal law talks about stimulant-depressive or hallucinogenic effect, and the Wisconsin law says stimulant-depressant, narcotic or hallucinogenic. But if narcotic is a synonym of depressant, then they're the same. But it's not because – and Wisconsin law makes clear that it's not the same. A classic depressant is a barbiturate versus a narcotic has generally been understood, and the Wisconsin statute itself defined narcotic in terms of relating to opioids and their synthetic opioids. So – and my limited chemical and pharmacological understanding is that opioids generally work on the mu receptors in the brain. So a narcotic analog of cocaine would be an analog of cocaine that affects those receptors. But it's also important to know that Wisconsin also – Is there such a thing? Is there such a thing? Standing here before you, I cannot make a chemical representation that it's possible. But the unique way – and I was just about to say the unique way that Wisconsin defines this – or the unique way that the Wisconsin statute works is all an individual would need to do to violate the Wisconsin statute would be to have a analog of cocaine and represent or intend that it has a narcotic effect. And it's really – it's very simple to do. You take that analog and say, this will get you as high as oxycodone. But the government argues that this argument came too late from you. So I think that the government is pushing waiver much too far, Your Honor, because we raised narcotic analogs before the district court. Maybe we didn't – maybe in the district court it wasn't made explicit that we were talking about it. But this represent to be is actually quite the camel's nose in the tent because people on the street say all sorts of things. Well, and I think that that makes sense of why Wisconsin – why the Wisconsin legislature has drafted their statute larger than the – or more broadly than the federal statute. Wisconsin is trying to make it as easy as possible for its prosecutors to bring and successfully prosecute these cases. What do we do with the federal definition of a controlled substance analog, which also refers to such representations or intentions? The government is telling us on the merits, skip past waiver, give you the benefit of plain error review here. Why doesn't the government's controlled substance analog argument win it on the merits? That's because it doesn't include narcotic. And a narcotic effect is different than – despite what the experts said below. Narcotic is not the same thing as depressant and Wisconsin makes it clear why it's not the same because opioids work in a unique way and so they've – Wisconsin has recognized that fact and thus added that as a – as a – one of the different kinds of effects that a analog can have. Why doesn't that just make it a subset though? I mean, yes, there could be other depressants that work in other ways perhaps and maybe it's not the same receptors in the brain, but doesn't that just make it a subset? No, Your Honor, because – and again, limited understanding. But my limited pharmacological understanding is that it's not – it's not a subset of depressants. It's a – it is a specific form of high that is limited to the way the narcotics affect the mu receptors. But setting all that aside, even if the district court did correctly make factual determinations and to be clear, there's a huge problem with these factual findings here because the government can't explain how a lane doesn't prohibit these findings. A lane makes very clear that factual findings by a district court judge at sentencing that result in the imposition of a mandatory minimum are prohibited. The government has no way to avoid that. Yes, Your Honor. Well, what about Mathis? Sorry, Your Honor? Mathis. Right, but Mathis didn't address the lane question regarding a finding as to the nature of the offense. While it might not have said it was doing so, by finding that – by finding that esters and narcotic analogs don't exist based on the government's declarations, the court was inherently finding that Mr. Turner did not commit his crime with the – with an ester or narcotic analog of cocaine. That's the ballgame because a lane makes clear that you cannot make a factual determination that results in the imposition of a mandatory minimum with the limited exception of the existence of the conviction itself. So regardless of what the government tries to call it, it's a factual investigation into the nature of the offense itself. I mean – We ordinarily – in a lot of different situations, Mr. Caspary, we look at the difference between legislative fact-finding and judicial fact-finding, adjudicated facts. This sure looks to me like legislative fact-finding. I agree entirely, Your Honor. What the district court did here is basically sit as a legislature of one and struck out sections of the Wisconsin – struck out sections of the Wisconsin statute that it thought were not bearing out in the facts. But that's exactly the kind of thing that a legislature should be doing, not a district court judge. No, we deal with legislative facts in challenges to legislation all the time, right? Challenges to the constitutionality of certain health care restrictions or First Amendment problems and so on, right? Why is this contrary to the lane? Why is this contrary? Because by finding that – I mean by finding that esters and narcotic analogs do not exist, the court had – the court found that Mr. Turner didn't commit his crime with that and thus his conviction – The district court found that no one could, right? It was not interested in the specific facts of Mr. Turner's prior conviction. It's saying this is a physical impossibility. That's true. That's how the district court terms his decision. And you're making the argument that a jury ought to find that kind of legislative fact. I mean I'll give you a good example of a legislative fact. Is the disease of asbestosis progressive or not? That's not the kind of thing we want every jury in the country. Some juries saying no, you know, once you've been exposed it's a certain level and other juries saying nope, it keeps getting worse with those little fibers burrowing into your lungs. And actually over time it's been established that it is progressive. But that was a legislative fact. It's a fact. But it's not the kind of thing that we want to be different all over the country. It's got to be resolved. I agree that it's a very difficult situation. But the particular legislative fact that you're discussing would never come up at sentencing of a criminal defendant. A lane is very limited to only sentencings of criminal defendants. And it's very clear that it's because there's a Sixth Amendment problem with the courts finding facts. What if there were a question about whether a particular substance, Substance X, had a narcotic effect? I mean, again, it doesn't make any sense to say Substance X is a narcotic when you're in Wisconsin, but it isn't in Illinois. It sort of either is or it isn't. Right. But the problem with the issue, again, you know, these kinds of hearings are entirely the exact – they are entirely what the court was trying to avoid with the categorical approach. We don't want these mini-trials every time a defendant says there's overbreadth and the government says these substances don't exist. The categorical approach is designed to avoid these mini-trials. So your argument is no matter how absurd the possibility in the Wisconsin statute is, if it's different in a broader way from the federal statute, it can't serve as a predicate. Well, we don't – first of all, I don't think we can see that it's an absurd result in the least. I think what we would say is that this court has already, in Ruth and Elaine, had stronger evidence toward the nonexistence of those substances, but nonetheless adopted a bright-line rule that is efficient and replicatable such that we don't have mini-trials constantly at sentencing, which is what the Supreme Court was trying to avoid when it adopted and tailored the categorical approach. I see I'm now well into my rebuttal time, so I will reserve my remaining time for rebuttal. That would be fine. Mr. Reinhardt. May it please the Court, David Reinhardt representing the United States in this matter. The district court did not err in concluding that Turner's Wisconsin cocaine convictions were serious drug offenses under the Armed Career Criminal Act. Nonexistent overbreath is not overbreath. Yes, there was a textual mismatch between federal and state law, but it was a mismatch in name only. The unrebutted evidence, and the record is what matters, established that esters of cocaine and narcotic analogs of cocaine don't exist. Well, it was unrebutted. I mean, the Wisconsin statute leaves the door open for the kind of scientific challenge that we're talking about because it has that language, all these things that are theoretically possible, right? And so, you know, Mr. Caspary makes a good point when he says, you know, we all of a sudden can have to go into chemistry class, you know, every time we have one of these things. Perhaps the Wisconsin legislature wrote it this way because people use terms carelessly. Some people call all drugs narcotics. They aren't. I mean, some drugs have stimulant effects. Other drugs have depressant effects or hallucinogenic or whatever other kind of effect they have. But if the Wisconsin legislature was trying to capture the full breadth of usage, then maybe it has written a broader statute. And there is something to be said for the court being able to just look at the face of the statute and compare it to the face of the federal statute and either say yes or no. And I think that's what makes it difficult in this particular case because there is that. Well, you don't want it to just look at the face of the statute. You need your experts to come in and opine. And I think the statute in this case almost calls for that because of that language where they indicate, quote, only to the extent those substances are theoretically possible. Does that ever happen in Wisconsin courts? Is there any authoritative interpretation of this statute? It's their statute, so I would assume they might have had something to say about it. On this specific issue, I don't believe so. I'm guessing there haven't been prosecutions for esters of cocaine. I would assume so because in this particular case, not only is it practically not possible, theoretically the experts indicated that this just can't occur. So doesn't that mean then that there's no realistic probability that someone would be prosecuted for esters of cocaine? And if that's the case, how are we not back at the realistic probability test, which our court has said gets applied after you look at the facial overbreath? I think the statute here is a higher bar. And the court found that it's not theoretically possible. So I think we can prove that it's both. I guess if you can prove it's theoretically not possible, of course it's not realistically. So then how do you get to that question if we've got to stop at the categorical mismatch under De La Torre and Ruth? I don't think you do have to stop at the mismatch in these types of cases when you're just looking at the statute because that's really what we're doing here. We're looking at the elements of the offense. And that's the real difference because when we're talking about a lien in the Sixth Amendment, we're not examining the facts of the prior conviction, the manner in which Turner committed this particular offense, but determining whether the overbroad portion of the statute exists. And I think that's where the difference is. The concerns in Taylor and Mathis were in regards to the brute facts, these facts such as looking at a prior record from 10 years ago or calling a witness to talk about the facts 10 years later or looking at a state court plea record that may have some extraneous facts. But that's not what's going on with this particular approach. We're looking at the statute. The unreliability concerns that are present when you're looking at the actual facts of the prior conviction aren't here when you're purely looking at a scientific examination of the statute. How do you – what is your response to Mr. Caspary's argument in the briefs and here today that this could lead to inconsistent results? So Judge Peterson looks at this and says it's gibberish. You know, based on the scientific evidence I've received, I conclude this, and then another district court concludes something different. And now we've got everybody everywhere having different scientific conclusions. I think determining whether a statute covers nonexistent conduct is straightforward, and I think experts can answer it. And most of the predicate convictions, cocaine, heroin, methamphetamine, that you see in these armed career criminal cases, those chemical structures are well established. I just don't see the disagreements in the scientific community over the structure. If they're so well established, how do we end up with a statute that the Wisconsin legislator has written like this? I think they were trying to catch all the variants. I don't know exactly. The legislative history doesn't give us much as far as why they added esters of cocaine, maybe, because it's structurally similar to Econine, but clearly cocaine cannot have esters. That's what the science tells us, and that's what the record established in this particular case. If Mr. Turner, through counsel, wanted to challenge those findings, he could have, and he could have brought in experts. In their filings, he indicated they were consulting experts and the Federal Defender's Office on these issues, and then asked the district court to take the evidence you're hearing off the calendar. And I think it was a strategic decision, so they could just look at the textual mismatch. Does he need to do that when we've got Ruth saying to us, you know, federal courts aren't to rewrite state statutes? But Ruth did leave the door ajar for these science-based arguments, and specifically, I think it was deletory, indicated that they're not foreclosing the government from bringing up these science-based arguments in future cases, and that they'd leave the analysis for another day. Mr. Reinhart, could I ask you to address the cocaine analog that's represented to have a narcotic effect? I assume I'm not persuaded by your waiver argument and that we need to address that on the merits. What's your best response? Well, I think it's already been mentioned, and regarding the actual cocaine, cocaine has a stimulant effect, the expert indicated that, and even if it did have a narcotic effect. I'm talking about represented. Oh, the represented. Well, again, it kind of gets back to the effect, though, and what that effect is. But no, it doesn't at all. I mean, it's somebody is trying to sell it by saying this has a narcotic effect. Bad science on the street. Yeah, exactly. Okay. I think it's, well, I believe it would still be covered under a depressant effect because they're really one and the same, and that's what would be my argument on that. Or at least as a subset. Yeah, it'd be a subset of a depressant effect. Okay. As far as Turner's case, I think it's a good example of how this process should work. There's a PSR. There's an objection to the PSR, and then there's an opportunity for evidentiary hearing. Both sides can call expert witnesses, and then the judge makes a determination, and here the unrebutted evidence was that the overbroad portion of the statute was nonexistent. And the record, again, the record is what matters. And that leads me to waiver. I think this case does fall clearly under waiver. But there was a different theoretical approach. If he were correct that going down into the weeds of the facts in these things is not the process that the Supreme Court has set out for us to use in these categorical comparisons, there's no waiver because you don't need to have the evidentiary hearing. If that's not the way to go, then, of course, there was a conscious decision not to have the evidentiary hearing, and that might have been that. But it doesn't strike me as a waiver scenario so much as the question on the table is, what's the right methodology? Yes, I understand the court's position on that, but I think he was given the opportunity to question these experts and the district court. The district court, obviously we're having debates here about what the proper method for resolving this is. I thought the district judge made quite clear that he thought this was open, and I didn't think defendants could save their alternative arguments for later. Correct. He did view it as open, and I guess that's where we were interpreting Ruth, that Ruth had left this issue open and made clear in two cases, Dellatorre and Ruth, that it was not foreclosing the government's arguments, science-based arguments in these cases. That's why I was wondering about Wisconsin law because if, perhaps contrary to all of our predictions, there had been a Wisconsin prosecution in which somebody was talking about reverse esters or some represented as narcotic using sloppy language even though maybe it really wasn't narcotic. I can think of some instances that might actually arise under this statute. Well, you'd think there might be a motion to dismiss by the defense. If the chemical, if it doesn't exist, an ester of cocaine, you would think that that would be raised in the state court. Right. I guess to conclude, I think the Supreme Court and Taylor in these categorical approach cases didn't envision disqualifying predicates if the overbroad conduct doesn't exist. I mean, different words should not be enough, and nonexistent overbreath is not overbreath. If there aren't any further questions, we would rest on our brief and ask the court to affirm the district court. All right. Thank you very much, Mr. Reinhart. Anything further, Mr. Caspary? Just very briefly, Your Honor. I want to leave us with a quote from Ruth. Whereas here the state statute of conviction is plain and intentional, our job is straightforward. We compare the state statute to the federal recidivism statute at issue and ask only if the state law is the same or narrower than federal law. It's the text of the statute that matters under Ruth. And so I just end where I started. Mr. Turner should be serving a 12-year sentence. The government's proposed approach that led the district court to impose a 20-year sentence will cause inefficiencies, inconsistent results, and violates clear and binding precedent. Consequently, this court should vacate Mr. Turner's sentence and remand for resentencing so that the district court can exercise its discretion under Section 3353A. All right. Thank you very much. Thanks to both counsel. And you took this case by appointment, did you not? Yes, Your Honor. We appreciate your efforts on behalf of your client and for the court. Thank you.